## MATTER OF CHEW

### In Bond Proceedings Pursuant to 8 C.F.R. 242.2(b)

#### A-22683002

*Decided by Board July 1, 1982*

An alien may apply to the District Director for modification of the conditions of his custody status after the immigration judge has been divested of jurisdiction by the lapse of seven days following the alien's release from custody or by the entry of a final administrative order of deportation, regardless of whether the immigration judge has previously made a custody determination in his case; accordingly, *Matter of Vea,* 18 I&N Dec. 171 (BIA 1981), is amended insofar as it indicates that an appeal to the Board is an alien's sole and exclusive recourse from a custody determination of an immigration judge.

ON BEHALF OF RESPONDENT:
James Hallagan, Esquire
30 West Washington
Chicago, Illinois 60602

ON BEHALF OF SERVICE:
George A. Rayner
Assistant District
Director

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The respondent appeals from the imposition of a bond condition barring him from engaging in unauthorized employment. The appeal will be dismissed.

The record reflects that the respondent was apprehended on December 2, 1981, pursuant to an Order to Show Cause which set bond at $2,500 and imposed as a condition of that bond a prohibition against unauthorized employment. The respondent requested modification of the conditions of his custody status. On December 4, 1981, an immigration judge reduced the amount of bond initially set by the District Director to $1,000 but left in effect the nonemployment rider. That same day, the respondent was released from custody upon posting bond; no appeal was taken from the immigration judge's determination.

On January 14, 1982, the respondent applied to the District Director for further amelioration of the conditions of his release, seeking cancellation of the no-work rider. The District Director denied the respondent's request on its merits on February 5, 1982, and the respondent filed the appeal presently before us.

A threshold jurisdictional issue is presented. In our recent decision in

*Matter of Vea,* 18 I&N Dec. 171 (BIA 1981), we stated in dictum that once an application for modification of custody status has been properly considered by an immigration judge,

> . . . the respondent's recourse thereafter lay in an appeal to the Board from the immigration judge's determination *and not, as the immigration judge indicated, in a request for amelioration to the District Director with a right of appeal to the Board from that official's determination.* (Emphasis added.)[1]

The question whether the District Director has authority to consider a request for change in custody status after an immigration judge has acted upon such request is now squarely before us. Upon further deliberation, we conclude that the District Director has jurisdiction over the application and we therefore retreat from the dictum in *Matter of Vea,* cited above.

As noted in *Vea,* the regulations give an alien the right to apply to an immigration judge for modification of the conditions of his release at any time after an initial custody determination has been made by the District Director and before an order of deportation becomes administratively final. If the alien has been released from custody, however, he must apply to the immigration judge within seven days from the date of release; thereafter, his application can only be considered by the District Director. *See also Matter of Sio,* 18 I&N Dec. 176 (BIA 1981).

We further noted that an alien may appeal to the Board from a custody determination of an immigration judge within five days after written notification of such determination is served on him. Insofar as we indicated in *Vea* that an appeal to the Board is the alien's sole and exclusive recourse from a custody determination of an immigration judge, we herewith amend that decision. We find nothing in the regulations that would preclude an alien from reapplying to the District Director for modification of the conditions of his custody status after the immigration judge has been divested of jurisdiction by the lapse of seven days following the alien's release from custody or by the entry of a final administrative order of deportation. Whether or not the immigration judge has previously made a custody determination in his case is, in our opinion, irrelevant.[2] We accordingly conclude that the District Director had jurisdiction to entertain the respondent's application for amelioration.

We now turn to the merits of the respondent's request for cancellation of the nonemployment rider. The Code of Federal Regulations, 8 C.F.R. 103.6(a)(2), sets forth a number of factors to be considered in determining whether a nonemployment rider ought to be imposed as a condition of bond. A principal concern manifest in the regulation is the impact of

---

[1] In *Matter of Vea, supra,* the District Director's determination was not before us.

[2] The District Director may, of course, deny the application for failure on the part of the alien to show changed circumstances.

the alien's employment upon the American labor market. *Matter of Vea, supra.* Other considerations specifically mentioned are the existence of prior immigration law violations relating to unauthorized employment and the likelihood of continued violations with the same employer, the number of aliens involved in performing the unauthorized employment, the recentness of the alien's arrival in the United States and the time lapse between arrival and commencement of employment, the prospects· for a grant of discretionary relief from deportation, and the presence or absence of a spouse or children dependent upon the alien for support. *See* 8 C.F.R. 103.6(a)(2)(i).[3] *See generally Matter of Leon-Perez,* 15 I&N Dec. 239 (BIA 1975).

The record reflects that the respondent, a native and citizen of Guatemala, is married but separated from his United States citizen wife and has a citizen child. He entered this country without inspection in August 1979 and immediately returned to his current employer for whom he had worked as a machinist without Immigration and Naturalization Service permission since September 1976. He was arrested by the Service in February 1981 and released after posting bond conditioned upon his refraining from engaging in unauthorized employment. He returned to work the day after his release, thereby breaching that bond. The respondent was subsequently found deportable but was granted the privilege of voluntary departure in lieu of deportation. He departed the United States under the grant of voluntary departure but returned to this country in April 1981, apparently again evading inspection by immigration authorities. Upon his return, the respondent resumed his unauthorized employment with his longtime employer and remained so employed to the time of his arrest by the Service in December 1981.

A memorandum to file prepared by the Service indicates that the Illinois Employment Office has advised that there is no shortage of applicants for the position occupied by the respondent and that due to current labor conditions, qualified applicants can immediately be referred for the job. The memorandum further states that the respondent has no

---

[3] 8 C.F.R. 103.6(a)(2) provides:

.(iii) *Factors to be considered.* Among the factors to be considered in connection with the imposition of the bond condition barring unauthorized employment are: Safeguarding employment opportunities for United States citizens and legal resident aliens; impact on and dislocation of American workers by alien's employment; the number of aliens involved in performing the unauthorized employment; prior immigration violations relating to acceptance of unauthorized employment by the alien; the likelihood of continued violations with the same employer; the recentness of the alien's arrival in the United States; the acceptance of the unauthorized employment shortly after such arrival; whether there is a reasonable basis for consideration of discretionary relief; whether a spouse or children are dependent on the alien for support, or other equities exist. These factors are intended as examples only and are not exclusive.

immediate family dependent upon him for support, that he does not qualify for discretionary relief from deportation, and that numerous aliens work at his place of employment.[4]

In denying the respondent's request for removal of the no-work rider, the District Director noted that the respondent does not support his United States citizen child, an observation not refuted by the respondent. The District Director also noted that an asylum application submitted by the respondent has been reviewed and appears to have been filed solely for the purpose of prolonging his stay in the United States.[5]

We conclude, as did the immigration judge and the District Director, that the imposition of the bond condition against unauthorized employment is appropriate in this case. It has specifically been determined that the respondent's employment has an adverse impact on employment opportunities for United States citizens and lawful permanent resident aliens. His history of immigration law violations, both with respect to unauthorized employment and otherwise, is a matter of record. He does not appear to be eligible for any form of relief from deportation that would permit him to remain in this country permanently or for an extended period of time. Finally, the fruits of his continued unauthorized employment would not benefit his United States citizen wife or child. For the foregoing reasons, we shall permit the nonemployment rider to stand.

**ORDER:** The bond condition against unauthorized employment is permitted to stand.

---

[4] The memorandum does not, however, indicate whether any or all of such aliens are in this country unlawfully.

[5] The respondent cites the deteriorating political climate in Guatemala as the basis of his claimed fear of persecution. However, there is no indication in the record that he personally will be singled out for persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion if deported to that country. *See* 8 C.F.R. 208.5.