# In re Jose VALLES-Perez, Respondent

File A92 992 355 - San Diego

*Decided February 10, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An Immigration Judge maintains continuing jurisdiction to entertain bond redetermination requests by an alien even after the timely filing of an appeal with the Board of Immigration Appeals from a previous bond redetermination request.

(2) If, after a bond appeal has been filed by the alien, the Immigration Judge grants an alien's bond redetermination request, that appeal is rendered moot, and the Board will return the record to the Immigration Court promptly.

Pro se

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Robert T. Torres, Assistant District Counsel

BEFORE: Board Panel: SCHMIDT, Chairman; DUNNE, Vice Chairman; MATHON, Board Member.

SCHMIDT, Chairman:

This is a timely appeal by the Immigration and Naturalization Service from the decision of an Immigration Judge dated June 7, 1996, ordering a reduction in the amount of the respondent's bond from $15,000, as originally set by the Service, to $10,000. The Service further appeals a second bond redetermination by the Immigration Judge on July 2, 1996, ordering the release of the respondent on his own recognizance. The issue in this case is whether the Immigration Judge is divested of jurisdiction over a second bond redetermination request when an appeal has been timely filed with the Board from a previous bond redetermination. We answer that question in the negative. We hold that the Immigration Judge does not lose jurisdiction to entertain requests to redetermine bonds even after the filing of a timely appeal to the Board from a previous bond redetermination. For other reasons which we will discuss later in this decision, the record will be remanded.

# I. BACKGROUND

The respondent is a 25-year old native and citizen of Mexico, who adjusted his status to that of lawful permanent resident on December 7, 1990, pursuant to section 245A of the Immigration and Nationality Act, 8 U.S.C. § 1255a (Supp. II 1990). On June 5, 1996, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) to the respondent, charging him with deportability from the United States under section 241(a)(2)(A)(ii) of the Act, 8 U.S.C. § 1251(a)(2)(A)(ii) (1994), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The Service set bond for the respondent's release at $15,000.

Unable to post the bond set by the Service, the respondent requested a bond redetermination hearing before an Immigration Judge, seeking amelioration in the terms of his custody status. *See* 8 C.F.R. §§ 3.19, 242.2(d) (1996). On June 7, 1996, the Immigration Judge lowered the amount of the respondent's bond to $10,000. The Service filed a timely appeal. 8 C.F.R. § 3.38 (1996).

A week later, on June 14, 1996, a deportation hearing was conducted. At the hearing, the Service abandoned its original charge of deportability and instead pursued against the respondent a new charge under section 241(a)(1)(A) of the Act, based on the respondent's 1990 conviction for a controlled substance violation. The Immigration Judge was not persuaded that the 1990 criminal proceeding against the respondent constituted a final conviction, and he ordered the deportation proceedings terminated. Two days later, the respondent requested a second bond redetermination hearing, asking to be released on his own recognizance.

The Service opposed the respondent's request, arguing that the respondent suffered a conviction for a controlled substance violation, and for that reason, he was both deportable and ineligible for bond under section 242(a)(2) of the Act, as revised by section 440(c) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 (enacted Apr. 24, 1996) ("AEDPA"). The Service also filed an appeal from the Immigration Judge's decision to terminate deportation proceedings.

Unaware that the Service had filed an appeal from his June 7, 1996, bond decision, and further unaware that the Service had filed an opposition to the respondent's request for a bond redetermination, the Immigration Judge considered the respondent's bond request and ordered the respondent released on his own recognizance on July 2, 1996. The Service once again appealed.[1] We now consider, jointly, both bond appeals by the Service.

---

[1] Later the same day, the Immigration Judge learned of the Service's submissions and issued a written memorandum indicating that he was without jurisdiction over the second bond request since jurisdiction had vested in the Board after the timely appeal of the Service on the first bond redetermination.

## II. SERVICE ARGUMENTS

In its brief on appeal, the Service argues that the Immigration Judge erred in conducting a second bond redetermination hearing, because the Service had appealed the first bond redetermination decision a few weeks earlier, and therefore the Immigration Court was without jurisdiction to consider any further bond matters. The Service also argued that the Immigration Judge erred in releasing the respondent, because the respondent had suffered a drug conviction and was subject to mandatory detention. The Service asks the Board to rescind the second bond redetermination and order the respondent taken into custody.

## III. APPELLATE JURISDICTION

It is normally true in immigration proceedings that once an appeal is filed with the Board of Immigration Appeals, the Immigration Court or district director loses jurisdiction over the matter. *See Matter of Aviles*, 15 I&N Dec. 588 (BIA 1976) (holding that the district director's reopening of visa petition proceedings subsequent to the filing of an appeal was not proper and his second order was of no effect); *Matter of Mintah*, 15 I&N Dec. 540 (BIA 1975); *see also Sewak v. INS*, 900 F.2d 667, 669 (3d Cir. 1990). However, bond proceedings differ greatly from other immigration proceedings. For example, in a deportation or exclusion proceeding, the decision of the Immigration Judge is considered final when appeal is waived or no appeal is taken from that decision. *Matter of Shih*, 20 I&N Dec. 697 (BIA 1993); 8 C.F.R. § 3.39 (1996). Further, an alien is subject to certain numerical and time limitations and fees with regard to motions to reopen or reconsider once a deportation order is final. *See* 8 C.F.R. §§ 3.2(c)(2), 3.23(b)(4)(i) (1996).

These consequences, however, are not applicable in the less formal bond proceedings. In bond proceedings, an alien remains free to request a bond redetermination at any time without a formal motion, without a fee, and without regard to filing deadlines, so long as the underlying deportation proceedings are not administratively final. In other words, no bond decision is final as long as the alien remains subject to a bond. *Matter of Uluocha,* 20 I&N Dec. 133 (BIA 1989); 8 C.F.R. § 242.2(d). Bond regulations do not limit a detained alien to only one application for modification of the amount or terms of a bond (although the Immigration Judge can decline to change his or her last bond decision if there is no change in circumstances). *Matter of Chew,* 18 I&N Dec. 262 (BIA 1982).[2]

---

[2] Other differences between bond proceedings and exclusion or deportation proceedings are recognized throughout the regulations. *See* 8 C.F.R. § 3.14(a) (1996) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service, *except for bond proceedings* . . . .") (emphasis added); 8 C.F.R. § 3.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and

The regulations and the Board mention only two instances where an Immigration Judge is divested of jurisdiction over a bond proceeding. The first is upon the lapse of the 7-day period following an alien's release from custody. The second is upon the entry of an administratively final order of deportation. In those cases, jurisdiction over bond proceedings vests with the district director. *Matter of Chew, supra; Matter of Sio,* 18 I&N Dec. 176 (BIA 1981); 8 C.F.R. § 242.2(d). While it is true that an alien has recourse to the Board from an Immigration Judge's bond decision, we have never held that the alien loses his or her recourse to seek a bond redetermination with the Immigration Judge when circumstances change. Indeed, the regulations presently provide that when an alien has been released following a bond proceeding, a district director has continuing authority to revoke or revise the bond, regardless of whether the Immigration Judge or this Board has rendered a bond decision. M*atter of Sugay*, 17 I&N Dec. 637 (BIA 1981); 8 C.F.R. § 242.2(e). In other words, the fact that an Immigration Judge or this Board may have entered a bond decision does not impede the district director's jurisdiction, once 7 days have elapsed after release, to modify a bond or to consider a reapplication for the modification of bond conditions. *Matter of Chew, supra.*

When an alien is detained, the district directors, the Immigration Courts, and this Board give a high priority to resolving the case as expeditiously as possible. Circumstances may change rapidly, and factual issues arise relating to an alien's bond status that are more appropriately evaluated by the district director or the Immigration Judge in the first instance. Allowing an Immigration Judge the opportunity to hear a bond redetermination request, without the need to first seek a remand from the Board, is a more expeditious procedure, when every day represents either an unwarranted delay in the release of an alien or a delay in the immediate detention of an alien who represents a risk of flight or a threat to the community. *See Matter of Chirinos*, 16 I&N Dec. 276 (BIA 1977) (stating that the primary consideration in a bail determination is that the parties be able to place the facts as promptly as possible before an impartial arbiter; informal procedures are therefore encouraged, including telephonic hearings, where feasible).

We therefore conclude that, when appropriate, an Immigration Judge may entertain a bond redetermination request, even when a previous bond redetermination decision by the Immigration Judge has been appealed to the Board. Thus, in this case, we find that the Immigration Judge did have jurisdiction to render a second bond redetermination on July 2, 1996.

---

shall form no part of, any deportation hearing or proceeding."); 8 C.F.R. § 242.2(d) (providing that unlike in deportation proceedings, in bond proceedings, "[t]he filing of an appeal from a determination of an Immigration Judge or a District Director shall not operate to delay compliance, during the pendency of the appeal, with the custody directive from which the appeal is taken, or to stay the administrative proceedings or deportation").

## IV.  EFFECT OF BOND REDETERMINATION

In the event that the Immigration Judge grants an alien's bond redetermination request after an appeal has been filed by the alien, that appeal is rendered moot, and the Board will issue an order returning the record to the Immigration Court promptly. If the alien files a new appeal with the Board, the Immigration Court should forward to the Board the record and the new decision of the Immigration Judge, together with any other recent submissions.

However, an alien may not defeat a Service appeal by continually filing bond redetermination requests, and the Service may elect to request consideration of its original appeal when the Immigration Judge declines to change the amount or conditions of bond. *Cf. Matter of Brown*, 18 I&N Dec. 324 (BIA 1982) (holding that an alien cannot defeat deportation proceedings by merely departing the United States and reentering, and the Service is not required to issue a new Order to Show Cause if the alien is still deportable upon return on the same grounds). The Service will be required to notify the Board in writing, with proof of service on the opposing party, within 30 days if it wishes to pursue its original appeal. *Cf. Green v. INS*, 46 F.3d 313 (3d Cir. 1995) (stating that Immigration Courts may set and enforce reasonable time deadlines for filing of documents); 8 C.F.R. § 3.40 (1996) (setting operating procedures by Immigration Courts).

## V.  ELIGIBILITY FOR BOND

In its appeal, the Service argues that the respondent should have been held without a bond because he suffered a controlled substance conviction. *See* AEDPA § 440(c). However, on September 30, 1996, while this appeal was pending, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 (enacted Sept. 30, 1996) ("IIRIRA"). Section 303(b)(3) of the IIRIRA, 110 Stat. at 3000-586, contains "Transition Period Custody Rules" that on October 9, 1996, replaced the amendments made by section 440(c) of the AEDPA. In contrast to the detention mandate established by the AEDPA in April 1996, the Transition Period Custody Rules restore the discretionary authority in the Attorney General to release lawfully admitted criminal aliens from custody, provided they will not pose a danger to the safety of other persons or property and are likely to appear for any scheduled proceedings. The Transition Period Custody Rules govern the present custody determination even though the alien's conviction and initial bond determination preceded the October 9, 1996, invocation of those rules. *Matter of Noble,* 21 I&N Dec. 672 (BIA 1996).

In the instant case, the Immigration Judge ordered the respondent released from custody without bond based on his prior decision to terminate deportation proceedings. However, that decision has been appealed by the Service,

and the respondent remains the subject of deportation proceedings. We will therefore remand the bond proceedings for the Immigration Judge to consider whether the respondent will "pose a danger to the jkdajjkds other persons or of property and is likely to appear for any scheduled proceeding." IIRIRA § 303(b)(3)(B)(i); *see also Matter of Valdez,* 21 I&N Dec. 703 (BIA 1997).

**ORDER:**     The record is remanded to the Immigration Court.