# In re Samuel JOSEPH, Respondent

## File A90 562 326 - York

*Decided April 23, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Pursuant to 8 C.F.R. § 3.19(i)(2) (1999), published as a final rule in 63 Fed. Reg. 27,441, 27,448-49 (1998), the Immigration and Naturalization Service's filing of a Form EOIR-43 (Notice of INS Intent to Appeal Custody Redetermination) provides an automatic stay of an Immigration Judge's order releasing an alien who is charged with removal under one of the mandatory detention grounds set forth in section 236(c)(1) of the Act, 8 U.S.C. § 1226(c)(1) (Supp. II 1996), even where the Immigration Judge has determined that the alien is not subject to section 236(c)(1) and has terminated the removal proceedings on that charge.

(2) The filing of an appeal from an Immigration Judge's merits decision terminating removal proceedings does not operate to stay an Immigration Judge's release order in related bond proceedings. *Matter of Valles*, 21 I&N Dec. 769 (BIA 1997), modified.

Sandra Greene, Esquire, Philadelphia, Pennsylvania, for respondent

Brett M. Parchert, Appellate Counsel, for the Immigration and Naturalization Service

Jeffrey T. Bubier, Assistant District Counsel, for the Immigration and Naturalization Service

Before:　Board En Banc: DUNNE, Vice Chairman; VACCA, HOLMES, HURWITZ, FILP-PU, COLE, MATHON, GRANT, and SCIALABBA, Board Members. Dissenting Opinion: MOSCATO, Board Member, joined by SCHMIDT, Chairman; HEIL-MAN, VILLAGELIU, ROSENBERG, GUENDELSBERGER, and JONES, Board Members.

MATHON, Board Member:

The Immigration and Naturalization Service has requested a ruling by the Board regarding whether or not an automatic stay of the Immigration Judge's release order is presently in effect pursuant to 8 C.F.R. § 3.19(i)(2) (1999), published as a final rule on May 19, 1998. *See* Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,448-49 (1998).

The Service alternatively requested that we issue a general emergency stay pursuant to our discretionary authority under 8 C.F.R. § 3.19(i)(1).

## I. PROCEDURAL AND FACTUAL BACKGROUND

The respondent is a native and citizen of Haiti who was admitted as a permanent resident in 1989. The Service commenced removal proceedings against the respondent in November 1998, charging that he was subject to removal under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien who has been convicted of an aggravated felony as defined in section 101(a)(43)(S) of the Act, 8 U.S.C. § 1101(a)(43)(S) (Supp. II 1996) (obstruction of justice). The Service based the charge on the respondent's January 19, 1996, conviction for Maryland's common law crime of "obstructing and hindering." The respondent was sentenced to 1 year in confinement for this offense. The record includes evidence of the conviction that comports with section 240(c)(3)(B) of the Act, 8 U.S.C. § 1229a(c)(3)(B) (Supp. II 1996), and 8 C.F.R. § 3.41 (1999).

After the commencement of these removal proceedings, the Service held the respondent without bond based on its charge that he is an aggravated felon and thus subject to the mandatory detention provisions of section 236(c)(1) of the Act, 8 U.S.C. § 1226(c)(1) (Supp. II 1996). The respondent filed a motion with the Immigration Judge requesting review of the Service's custody determination. The respondent requested release on his own recognizance, or alternatively, on a reasonable bond condition, arguing that his offense is not an aggravated felony that would subject him to mandatory detention.

On January 20, 1999, the Immigration Judge issued an oral decision in the underlying removal proceedings. The Immigration Judge terminated the respondent's removal proceedings based on his finding that the respondent was not removable as an aggravated felon. The Immigration Judge then issued an order releasing the respondent from custody. The Immigration Judge followed his oral orders with a "summary" of his oral decision terminating proceedings and a written release order, each dated January 22, 1999.

On January 20, 1999, the same day that the Immigration Judge issued his oral release order, the Service attempted to file with the Immigration Court a Form EOIR-43 (Notice of INS Intent to Appeal Custody Redetermination). The Form EOIR-43 is the form designated in 8 C.F.R. § 3.19(i)(2) as the mechanism for the Service to invoke an automatic stay of the Immigration Judge's release order as authorized under that provision. The Immigration Judge rejected the Form EOIR-43 and issued a handwritten decision. In his decision the Immigration Judge attested to the Service's

attempt to file the form, but explained that he did not accept the form because of his findings that the respondent was neither removable as an aggravated felon nor subject to the mandatory detention provisions of section 236(c) of the Act.

On January 27, 1999, the Service filed timely appeals from both the Immigration Judge's release order and his order terminating removal proceedings. The Service filed the instant motion on February 10, 1999, requesting the Board to rule on whether an automatic stay had been invoked, or alternatively, to grant a discretionary stay under 8 C.F.R. § 3.19(i)(1).

In an order dated March 18, 1999, the Board granted the Service a temporary discretionary stay of the Immigration Judge's release order pursuant to our authority under 8 C.F.R. § 3.19(i)(1) and provided the parties until March 26, 1999, to file supplemental briefs addressing this important and novel issue concerning the operation of the automatic stay regulation in these circumstances. The parties each filed timely supplemental briefs. Additionally, the Immigration Judge issued a formal written memorandum of his bond decision on March 26, 1999.

## II. THE APPLICABLE LAW

Section 236 of the Act governs the apprehension and detention of aliens during removal proceedings. For most criminal and terrorist aliens, including those who are deportable under section 237(a)(2)(A)(iii), detention pending a decision on their removability is mandatory. Section 236(c)(1) of the Act provides that the Attorney General "shall take into custody" aliens who are deportable or inadmissible under the designated grounds. The statute at section 236(c)(2) provides that "[t]he Attorney General may release an alien described in paragraph (1) only if the Attorney General decides" that they fall within the narrow exception created by that section to protect witnesses cooperating in certain major criminal investigations. *See* section 236(c)(2) of the Act.

The mandatory detention statute, section 236(c)(1), took effect in October of 1998 upon the expiration of the Transition Period Custody Rules ("TPCR"). See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 303(b)(3), 110 Stat. 3009-546, 3009-586 ("IIRIRA"). The TPCR were a temporary "stop-gap" measure invoked after the IIRIRA's enactment to address the lack of detention space necessary to immediately implement the mandatory detention rule of section 236(c)(1). Under the TPCR, Immigration Judges had retained discretionary authority to release certain criminal aliens upon a demonstration that they did not present a danger to the community or a flight risk. That discretion ended with the TPCR's expiration. Consistent

with Congress' mandate, the regulations implementing section 236(c) of the Act remove from Immigration Judges the jurisdiction to entertain requests for release, on bond or otherwise, from criminal and terrorist aliens described in its provisions who do not fall within the exception. 63 Fed. Reg. at 27,448. The pertinent regulation, 8 C.F.R. § 3.19(h)(2)(i), provides, in relevant part:

> Upon expiration of the Transition Period Custody Rules set forth in section 303(b)(3) of Div. C. of Pub. L. 104-208, an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:
>
> . . .
>
> (D) Aliens in removal proceedings subject to section 236(c)(1) of the Act (as in effect after expiration of the Transition Period Custody Rules) . . . .

Under the current regulatory scheme, Immigration Judges retain jurisdiction over custody issues pertaining to most criminal aliens only to the extent of determining whether an alien is "properly included" within the mandatory detention provisions of section 236(c)(1) of the Act. The regulation at 8 C.F.R. § 3.19(h)(2)(ii) provides:

> [W]ith respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.

The present regulations provide the Service with two procedures to stay an Immigration Judge's release order pending the Board's adjudication of its appeal from that order. The prior practice of seeking an emergency discretionary stay from the Board remains available to the Service and is now codified at 8 C.F.R. § 3.19(i)(1). The Board's grant of a discretionary stay under 8 C.F.R. § 3.19(i)(1) is not tied to a criminal ground of removability. In addition, the new automatic stay regulation at 8 C.F.R. § 3.19(i)(2) provides a separate, nonadjudicatory procedure in certain cases which allows the Service to stay an Immigration Judge's release order in designated categories of criminal cases until the Board decides the Service's bond appeal. The automatic stay regulation, 8 C.F.R. § 3.19(i)(2), provides:

> *Automatic stay in certain cases*. If an alien *is subject to* section 242(a)(2) of the Act (as in effect prior to April 1, 1997, and as amended by section 440(c) of Pub. L. 104-132), section 303(b)(3)(A) of Div. C. of Pub. L. 104-208, *or section 236(c)(1)* of the Act (as designated on April 1, 1997), and the district director has denied the alien's request for release or has set a bond of $10,000 or more, *any order of the immigration judge authorizing release* (on bond or otherwise) *shall be stayed* upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR-43) with the Immigration Court on the day the order is issued, *and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals.* The stay shall lapse upon failure of the Service to file a timely notice of appeal in accor-

dance with § 3.38. (Emphasis added.)

The issue before us is whether the Service may properly invoke an automatic stay of an order releasing an alien where the Immigration Judge has determined that the respondent is not "subject to" mandatory detention under section 236(c)(1) of the Act after completing a removal hearing in which the Immigration Judge has found that the respondent is not removable under one of the mandatory detention grounds.

## III. SUMMARY OF THE PARTIES' POSITIONS

The respondent, through his counsel, argues that the Immigration Judge properly rejected the Form EOIR-43 because its use is inappropriate in light of the Immigration Judge's findings that the respondent is not subject to section 236(c)(1) or removable as an aggravated felon. The respondent also defends the propriety of the Immigration Judge's decision that the respondent's "obstructing and hindering" conviction was not an obstruction of justice offense as contemplated by section 101(a)(43)(S) of the Act. He further contends that the use of an automatic stay in these circumstances undercuts the Immigration Judge's authority as an impartial reviewer of the Service's decisions in custody matters. The respondent urges that the continued custody of a lawful permanent resident who has been found not to be removable by an Immigration Judge raises serious constitutional concerns. Accordingly, the respondent requests that the Immigration Judge's custody order be affirmed and that he be released on his own recognizance.

The Service contends that the filing of an Form EOIR-43 is a ministerial act and that the Immigration Judge had no authority to reject it. The Service states that detention of an alien charged with removability under section 237(a)(2)(A)(iii) is mandatory under the Act and that the implementing regulations provide that Immigration Judges lack authority to redetermine conditions of custody with respect to such aliens. The Service does not question the Immigration Judge's authority to terminate proceedings or to determine that the respondent is not subject to mandatory detention. However, the Service contends that the regulation permits it to invoke an automatic stay in precisely these circumstances to prevent the release of a criminal alien that it asserts is subject to section 236(c)(1) until the issue of whether the respondent is eligible for release is resolved by the Board. The Service highlights the mandatory language of the automatic stay regulation and the lack of any exception in the regulation addressing circumstances where an Immigration Judge has ordered release after terminating removal proceedings. Finally, the Service argues that the Immigration Judge should not be allowed to rule on whether his own release order should be stayed.

We agree with the Service that this regulatory scheme does not permit

an Immigration Judge to rule on whether his or her own release order should be stayed.

## IV. ANALYSIS

### A. The Respondent's Constitutional Concerns

We note that it is not within the purview of this Board to pass upon the constitutionality of the mandatory detention provision in section 236(c)(1) of the Act. *See generally Matter of Cenatice*, 16 I&N Dec. 162 (BIA 1977). However, we note that our review of the history of the regulations implementing section 236(c)(1) and the other IIRIRA provisions controlling the detention and release of aliens, which includes the automatic stay regulation at issue here, shows that this regulatory scheme was promulgated by the Attorney General after weighty consideration of the constitutional and liberty interests implicated by the mandatory detention of criminal aliens before there has been a final order regarding removability. 63 Fed. Reg. 27,441-47 (citing, inter alia, *Reno v. Flores*, 507 U.S. 292 (1993) (recognizing the power of Congress and the Attorney General to promulgate rules providing for the detention of certain categories of aliens (certain juvenile alien detainees), without providing for an individualized assessment of whether each member of the class warrants detention); *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."); *Marcello v. Bonds*, 349 U.S. 302 (1955) (rejecting a claim that due process is violated where the Service, which initiates and prosecutes proceedings against the alien, also decides custody); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings."); *Doherty v. Thornburgh*, 943 F.2d 204, 208, 209 (2d. Cir. 1991) ("[A]n alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest," and is consequently "narrow.")).

The regulatory history further reflects that the Department of Justice, in exercising its rulemaking authority, considered district court cases which have held mandatory detention statutes unconstitutional under the Due Process Clause of the Fifth Amendment. The Department espoused the view that "these district courts have misapprehended the law of immigration detention, and have failed to defer to Congress and the Executive in matters of immigration as required by the Supreme Court's teachings." 63 Fed. Reg. at 27,445. "Some of the district court cases err in applying to immigration detention the standard for pre-trial criminal bail determina-

tions articulated in *United States v. Salerno*, 481 U.S. 739, 747-51 (1987). The Supreme Court, however, has rejected the extension of *Salerno* in a post-conviction context. *Hilton v. Braunskill*, 481 U.S. 770, 779 (1987) ("[A] successful (state) habeas petitioner is in a considerably less favorable position than a pretrial arrestee, such as the respondent in *Salerno*, to challenge his continued detention pending appeal . . . .")." *Id.* (citations omitted).

It is apparent that the constitutional concerns relating to the mandatory detention of criminal aliens prior to a final order as to their removability under a criminal charge were thoroughly addressed in the rulemaking process, and we are bound to follow the regulations as promulgated by the Attorney General.

## B. The Filing of a Form EOIR-43 is a Ministerial Act

The automatic stay regulation at 8 C.F.R. § 3.19(i)(2) does not accord to the Immigration Judge the discretion to reject a timely filed Form EOIR-43. We agree with the Service that the filing of a Form EOIR-43 is a ministerial act. A stay pursuant to § 3.19(i)(2) is *automatic* upon the Service's timely filing of the Form EOIR-43. The language "shall be stayed" and "shall remain in abeyance" is patently mandatory. The automatic stay provision exists as a measure to carry out Congress' clearly stated intent that, with few exceptions, aliens in removal proceedings pursuant to one of the criminal grounds enumerated in section 236(c)(1) *must* be detained pending a decision on their removability. Section 236 of the Act. As a practical matter, as we discuss in greater detail below, in the present regulatory scheme the automatic stay provision will generally only come into play when the Service disputes an Immigration Judge's finding that a criminal alien is eligible to be released (not subject to the mandatory detention provisions of section 236(c)(1)).

## C. When an Alien Is "subject to" Section 236(c)(1) for Purposes of Invoking an Automatic Stay

The respondent argues that the automatic stay provision does not apply in this case because the Immigration Judge determined that the respondent is not "subject to" section 236(c)(1) of the Act, a precondition specified in 8 C.F.R. § 3.19(i)(2). Specifically, the respondent asserts that the Immigration Judge's conclusion that the respondent's 1996 conviction under Maryland common law for the crime of "obstructing and hindering" is not an aggravated felony under section 101(a)(43)(S) of the Immigration and Nationality Act removes the Immigration Judge's January 20 and 22, 1999, custody redetermination orders from the class of orders for which the Service can invoke a § 3.19(i)(2) automatic stay. The dissent agrees with the respondent that the Immigration Judge's decision takes the respondent out

from under the "subject to . . . section 236(c)(1)" language in the automatic stay regulation. Essentially, the dissent would create an adjudicatory role for the Immigration Judge in the automatic stay process that is not provided, either explicitly or implicitly, by the regulation.

The phrase "subject to" cannot be said to have achieved status as a term of art with a consistently applied meaning in immigration law. It is used in our immigration statutes, regulations, and case law in many different ways in widely varying contexts.[1]

However, when used in connection with applying the governing detention standards, a criminal alien is generally considered "subject to" those rules when he or she is in proceedings pursuant to a charge of removability or deportability based on an underlying conviction that falls under the umbrella of the applicable detention statute. The detention provisions are typically first applied to aliens early in the process, before there has been a hearing before the Immigration Judge regarding the merits of the charge of removability or deportability.

For example, the current regulations controlling custody and bond issues pending an administratively final order, 8 C.F.R. §§ 3.19 and 236.1 (1999), use the term "subject to" in multiple instances in addition to the automatic stay provision at issue here. *See* 8 C.F.R. §§ 3.19(h)(1)(i)(D), (2)(i)(D), (4) (removing the Immigration Judges' jurisdiction to redetermine the custody conditions of specified classes of aliens); 3.19(h)(3) (allowing the Immigration Judge to redetermine the custody determinations of certain aliens under the TPCR); 236.1(c)(1)(ii) (explaining that "subject to the TPCR" while those rules were in effect means aliens described in IIRIRA

---

[1]For example, many references in the Act and in Title 8 of the Code of Federal Regulations employ the term simply to refer the reader to another paragraph or section that is relevant to the topic, and which may or may not restrict or modify the application of the provision including the "subject to" term in any given case. For example, section 208(a)(2)(C) of the Act, 8 U.S.C. § 1158(a)(2)(C) (Supp. II 1996), regarding previous asylum applications states: "Subject to subparagraph (D), paragraph (1) shall not apply to an alien if the alien has previously applied for asylum and had such application denied." *See also* 8 C.F.R. § 240.49(a) (1999) ("The application shall be subject to the requirements of 8 CFR parts 240, 245, and 249."). In a similar vein, the term is often used in connection with numerical limitations controlling the availability of certain immigration benefits to otherwise eligible aliens. *See, e.g.*, sections 201(b), (c); 202(a)(2) (numerical limits on visas); 240A(e) (numerical limits on grants of cancellation of removal) of the Act, 8 U.S.C. §§ 1151(b),(c); 1152(a)(2); 1229b(e) (1994 & Supp. II 1996). The term is also used in a way that can best be characterized as expressing the possibility of certain consequences if the stated preconditions occur. *See* section 208(c)(3) of the Act (providing that an alien whose asylum grant is terminated "is subject to any applicable grounds of inadmissibility or deportability" ); *see also* section 217(e)(1)(C) of the Act, 8 U.S.C. § 1187(e)(1)(C) (1994) (providing that a carrier is "subject to the imposition of fines" for transporting certain aliens without passports into the United States).

§ 303(b)(3)(A) who were in deportation or removal proceedings); *see also* 8 C.F.R. §§ 236.1(c)(2),(3), (4), (5)(ii), (6)(iv).

Each of these provisions includes aliens who have not yet had their deportation or removal hearings, necessarily meaning that in the bond and custody context, being "subject to" the applicable detention statute is not tied to a decision by an Immigration Judge on the merits as to whether or not the criminal alien is in fact deportable or removable on the criminal ground that triggered the application of the detention provision.

Similarly, in our bond case law, the term "subject to," for purposes of determining whether the prevailing detention provisions apply to a particular alien, has been loosely used in cases decided both before and after an Immigration Judge has issued a decision on an alien's deportability. *See generally Matter of Melo*, 21 I&N Dec. 883, at 884 (BIA 1997); *Matter of Valdez*, 21 I&N Dec. 703 (BIA 1997); *Matter of Eden*, 20 I&N Dec. 209, 214-15 (BIA 1990). In those cases where a deportation hearing had already been completed, we have never suggested that the alien would not also have been considered "subject to" the applicable detention provisions prior to the Immigration Judge's decision on deportability. However, we sometimes noted that we found an Immigration Judge's bond order "reinforced" by his or her subsequent finding that the alien was deportable. *See Matter of Drysdale*, 20 I&N Dec. 815, 818 (1994).

The regulatory history of the detention provisions shows that the proper inquiry for a district director (and an Immigration Judge) in determining whether the mandatory detention provisions apply is whether there is "reason to believe that this person falls within a category barred from release under applicable law." 63 Fed. Reg. at 27,444-45. In this case, the respondent's conviction record provided the Service with the requisite "reason to believe" that the respondent was removable as an aggravated felon, and the respondent thus became "subject to" section 236(c)(1) of the Act when charged with removability under section 237(a)(2)(A)(iii). The question that remains for us to decide is whether the respondent remains "subject to" section 236(c)(1) for automatic stay purposes after an Immigration Judge has decided that he is not.

In this regard, we find it important to note that section 236 of the Act and the implementing regulations discussed above apply to all custody determinations made while an alien is in removal proceedings "pending a decision on whether the alien is to be removed from the United States." Section 236(a) of the Act. There is a separate statutory and regulatory scheme which controls the  detention and release of aliens after an administratively final order. *See* section 241 of the Act, 8 U.S.C. § 1231 (Supp. II 1996); 8 C.F.R. part 241, subpart A (1999). The absence of a third set of rules applicable to aliens during the interval between when an Immigration Judge issues a decision on the issues of removability and relief and when there is an administratively final decision on removability makes it clear

that the "decision" referred to in section 236(a) of the Act, which cuts off the applicability of that section, is an administratively final decision. An Immigration Judge's decision is not administratively final when the parties have not waived appeal and the time to appeal has not lapsed, or where, as here, a timely appeal has been filed with the Board of Immigration Appeals from the Immigration Judge's decision on removability. Until there is an administratively final order, the alien remains in removal proceedings based on the charged grounds of removal, and the rules in section 236 and its implementing regulations apply.

In *Matter of Valles*, 21 I&N Dec. 769 (BIA 1997), a panel of this Board examined a factual situation that is analogous to the one before us, where an Immigration Judge had released an alien from Service custody after determining that he was not deportable as charged and had terminated proceedings. In *Valles*, it was noted that "that decision has been appealed by the Service, and the respondent remains the subject of deportation proceedings." *Id.* at 773-74. The bond record was therefore remanded to the Immigration Judge for application of the TPCR, which had taken effect subsequent to the Immigration Judge's release order. To the extent that *Valles* may be read as suggesting that a Service appeal from an Immigration Judge's decision finding an alien not removable or deportable operates in any way to stay an Immigration Judge's release order, we now expressly reject that proposition. Since an appeal from the release order itself would not suffice to stay the release of an alien without the additional operation of one of the stay procedures in 8 C.F.R. § 3.19(i), it follows that a merits case appeal will not stay an Immigration Judge's release order. We note that the focus in *Valles* was on other issues and that the case was decided before the promulgation of the current regulatory scheme regarding stays of Immigration Judge's release orders.

In the case before us, we do find, consistent with *Valles*, that the respondent remains "subject to" removal under section 237(a)(2)(A)(iii) until there is a final administrative decision on his removability. However, our role in the separate detention review process is to determine whether or not the Immigration Judge correctly determined, based on the instant bond/custody record (which in most cases is less complete than the removal record), that the respondent is not "subject to" mandatory detention under section 236(c)(1). For the reasons discussed below, we interpret the regulations as providing the Service a mechanism to continue the detention of the respondent until we resolve that issue in the context of its appeal from the Immigration Judge's release order. We note that our decision in the Service's appeal from the Immigration Judge's release order will not necessarily predetermine our decision as to the respondent's ultimate removability as an aggravated felon, as our removal decision may be based on a more complete removal record.

**D. The Immigration Judge's Authority To Make a Determination**

### That an Alien Is Not "subject to" Section 236(c)(1)

The dissent correctly points out that the Immigration Judge has been provided the specific authority under the regulation at 8 C.F.R. § 3.19(h)(2)(ii) to make a determination as to whether or not an alien is "properly included" within the mandatory detention provision, and it opines that our interpretation of the automatic stay provision diminishes that authority. The pertinent portion of the regulation provides: "[W]ith respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs." 8 C.F.R. § 3.19(h)(2)(ii). The view of the dissent is that our interpretation of the regulations gives effect to the Immigration Judge's ruling on whether an alien is "properly included" in the mandatory detention provision only in those cases where the Service agrees with the ruling of the Immigration Judge.

We fully agree that the automatic stay regulation undercuts the Immigration Judge's authority to make a determination that an alien is not "subject to" mandatory detention when the Service challenges the Immigration Judge's release order. The Department acknowledges in the regulatory history that it received comments that the automatic stay provision "encroaches on the authority of immigration judges" in response to the publication of the proposed rule. 63 Fed. Reg. at 27,447. Nonetheless, it decided to retain the automatic stay provision in the final rule without modification, and the Service, the Immigration Judges, and this Board are bound to follow it. *Id.* As was discussed in the regulatory history, the automatic stay provision is intended as a safeguard for the public, as well as a measure to enhance agencies' ability to effect removal should that be the ultimate final order in a given case. It "preserv[es] the status quo briefly while the Service seeks expedited appellate review of the immigration judge's custody decision. The Board of Immigration Appeals retains full authority to accept or reject the Service's contentions on appeal." *Id.*

The dissent does not appear to dispute that the automatic stay provision gave the Service the authority, pending our adjudication of its bond appeal, to override an Immigration Judge's decision that a criminal alien did not represent a danger to the community or a flight risk, or to stay an Immigration Judge's release order when it disputed the amount of bond, when those considerations were relevant to release under the TPCR, and the district director had either denied the alien's request for release or had set bond in the amount of $10,000 or more. *See* 8 C.F.R. § 3.19(i)(2). Since the Department was unwilling to risk that an Immigration Judge might err in making those determinations under the TPCR, when the Immigration Judge retained some discretion to release criminal aliens, it follows that the Department envisioned that an Immigration Judge's determination whether

an individual is a criminal alien subject to the superseding mandatory detention proceedings of section 236(c)(1) could also be overridden by the Service's judgment to the contrary in the custody context. The regulatory history expressly states that the automatic stay provision was "included as [a] permanent revision[ ], without regard to the expiration of the TPCR." 63 Fed. Reg. at 27,447.

Although the invocation of an automatic stay by the Service undeniably limits, at least until the Board's review of the Service's appeal from the Immigration Judge's release order, the effectiveness of an Immigration Judge's determination under 8 C.F.R. § 3.19(h)(2)(ii) that an alien is not "properly included" in the mandatory detention provision, it does not render 8 C.F.R. § 3.19(h)(2)(ii) superfluous or leave the Immigration Judge's determination without an important role in the regulatory scheme.

As a preliminary matter, the Immigration Judge's authority under 8 C.F.R. § 3.19(h)(2)(ii) affords the Immigration Judge an opportunity to determine his or her jurisdiction over custody/bond issues affecting the criminal alien. Moreover, when the Immigration Judge's determination under that provision is that the Service has properly charged the alien with one of the section 236(c)(1) grounds, and that he or she consequently lacks jurisdiction to redetermine the mandatory custody condition imposed by the Service, that decision appears to provide the alien the only vehicle to seek further review by the Board of the question whether he or she falls under the mandatory detention rules. As explained below, we find no provision in the Act or the regulations which would allow an alien to directly appeal to this Board from the district director's determination that he or she is subject to mandatory detention until a final decision is rendered in the underlying removal proceedings. *See* 8 C.F.R. § 236.1(d) (1999).

The Board's jurisdiction over appeals from custody decisions is circumscribed by 8 C.F.R. § 3.1(b)(7) (1999), which refers us to 8 C.F.R. part 236, subpart A. Appeals from custody decisions are addressed in § 236.1(d)(3) of that subpart. The regulation at 8 C.F.R. § 236.1(d)(3)(i) pertains only to appeals by an alien or the Service from decisions by Immigration Judges. Further, § 236.1(d)(3)(ii) authorizes alien appeals from the conditions imposed in district directors' *release* orders in cases where there is not yet a final removal order. Finally, § 236.1(d)(3)(iii) provides for an alien appeal from the conditions of release imposed by a district director after there is an administratively final removal order. None of these provisions affords an alien the right to appeal from a district director's decision finding that he or she is subject to mandatory detention pending a final administrative order in removal proceedings. The alien must first seek an Immigration Judge's determination on that issue pursuant to 8 C.F.R. § 3.19(h)(2)(ii).

We find that the regulatory structure does provide the alien a right to appeal from an Immigration Judge's determination under § 3.19(h)(2)(ii)

that he or she is properly subject to mandatory detention. The regulation at 8 C.F.R. § 236.1(c)(11) qualifies that "[a]n immigration judge may not exercise the authority provided in this section, and the review process described in paragraph (d) of this section shall not apply, with respect to any alien beyond the custody jurisdiction of the immigration judge as provided in § 3.19(h) of this chapter." 63 Fed. Reg. at 27,450. However, since we have found that § 3.19(h)(2)(ii) specifically authorizes an Immigration Judge to include an alien within his or her custody jurisdiction for the specific purpose of determining whether he or she is "properly included" within the mandatory detention provisions, it follows that for the purpose of making this determination, an alien is not "beyond the custody jurisdiction of the immigration judge." Therefore, the review process in § 236.1(d) applies, and the alien may properly appeal the Immigration Judge's determination to the Board under § 236.1(d)(3)(i). Any other construction would foreclose a criminal alien from further administrative review of the question whether he or she is properly subject to mandatory detention until the issuance of an administratively final removal order, at which point the Immigration Judge lacks any jurisdiction over custody determinations. Custody determinations then vest with the district director under the separate set of rules provided in section 241 of the Act and 8 C.F.R. §§ 241.1, 241.3, and 241.4. *See also* 8 C.F.R. § 236.1(d)(1), (3)(iii).

As a practical matter, it is true that an opportunity to appeal the Immigration Judge's determination that an alien is subject to section 236(c)(1) of the Act often becomes moot. In the interest of administrative efficiency, when the records of proceedings for bond appeals from Immigration Judge's custody orders and case appeals from Immigration Judge's decisions in removal proceedings are received at the Board and are sufficiently complete for adjudication at approximately the same time, we generally will first decide the merits case appeal, rather than spend our resources addressing a custody determination by an Immigration Judge that will immediately become moot as soon as our final removal order is issued. However, in many cases, the bond appeal is ripe for adjudication before the appeal from the Immigration Judge's removal decision, and we then proceed to adjudicate the merits of the bond appeal. The Immigration Judge's determination under § 3.19(h)(2)(ii) then serves an important role as the only vehicle for an alien to seek our review of the decision by the Immigration Judge that the alien is subject to mandatory detention.

When, on the other hand, the Immigration Judge decides, as in the instant case, that an alien is not "properly included" in section 236(c)(1)'s mandatory detention provisions and, in conjunction with that finding, proceeds to order an alien released, on bond or otherwise, his or her § 3.19(h)(2)(ii) determination is not devoid of all significance as a result of the existence of the automatic stay provision. That ruling controls to the extent that the Service concedes that the criminal charge is not adequately

supported in the custody record (the Service may choose to withdraw the criminal charge of removability, or may choose to proceed with the charge on the more complete record in removal proceedings) or concludes that the Immigration Judge's reasoning is sufficiently sound that it should not seek an automatic stay. In exercising its prosecutorial discretion, the Service must evaluate the reasoning behind the Immigration Judge's determination in assessing whether to appeal the Immigration Judge's release order and whether it should invoke the automatic stay during the pendency of that appeal. The regulatory history notes that Service custody appeals must be approved by responsible senior officials within the Service. 63 Fed. Reg. at 27,447. If the Service does not appeal within the 30-day period provided in 8 C.F.R. § 3.38 (1999), the regulation provides the protective measure that the automatic stay will then lapse, and the alien must be released pursuant to the Immigration Judge's final order. When the Service does appeal the Immigration Judge's release order, the Immigration Judge's § 3.19(h)(2)(ii) determination that the alien is not "properly included" within section 236(c)(1) of the Act, and is thus eligible to be released, will be the subject of our review of the Service's appeal.

### E. The Practical Effect of the Automatic Stay Regulation

The dissent's construction of the regulations leaves the automatic stay provision with little practical effect following the expiration of the TPCR. The dissenters would view its applicability as limited to a situation where an Immigration Judge does not disagree with the Service's charge that an alien falls within the section 236(c)(1) mandatory detention provision, but nonetheless proceeds to redetermine conditions of custody imposed by the Service and releases the alien in direct contravention of the patent language of the statute and the regulation. Section 236(c)(1) of the Act; 8 C.F.R. § 3.19(h)(2)(i)(D). Based on our review of countless custody determinations by Immigration Judges, we expect that such a total disregard or misunderstanding of the law would be rare.

Rather, we find that the automatic stay was intended to come into play in circumstances such as those presented here, where the Service disputes the Immigration Judge's determination that a criminal alien is not subject to mandatory detention and appeals an order authorizing release under any conditions.

The regulatory language does not foreclose the dissent's construction. But given the clarity of the removal of Immigration Judges' bond jurisdiction over criminal aliens, the dissent's reading largely restricts the current life of the automatic stay provision to situations where Immigration Judges, who are sworn to uphold the law, deliberately exceed their authority and order release, with or without bond, for aliens who by law must be held in custody. The regulatory history fails to reflect that the automatic stay was

expected to perform such an impoverished function after the expiration of the Transition Period Custody Rules. Our interpretation gives the regulation meaning beyond the arena of isolated mistakes or deliberate jurisdictional transgressions.

To allow the Immigration Judge to defend his or her own release order by thwarting the operation of the automatic stay provision, based on a disputed determination that an alien's offense does not fit within the class of offenses that subjects him or her to mandatory detention, would leave the automatic stay provision without any meaningful effect. When an alien has been charged with removability based on one of the enumerated section 236(c)(1) offenses, he or she is "subject to" the mandatory detention provisions of that section. There will generally only be a release order for the Service to appeal and against which to invoke the automatic stay when the Immigration Judge exercises his or her limited jurisdiction under 8 C.F.R. § 3.19(h)(2)(ii) and concludes, contrary to the Service's assertions on the Notice to Appear, that an alien's offense does not place him or her within 8 C.F.R. § 3.19(h)(2)(i)(D) as an alien "in removal proceedings subject to section 236(c)(1) of the Act." In the case before us, whether the respondent's conviction is an aggravated felony as charged by the Service, and thus renders him "subject to" section 236(c)(1), is precisely the issue in dispute in the Service's appeal from the Immigration Judge's release order. To preserve the status quo until we decide the appeal is the very reason that it seeks to invoke the automatic stay provision.

Failing to give the automatic stay effect in these circumstances, pending our expedited adjudication of the Service's appeal from the Immigration Judge's release order, would not achieve the regulation's twin goals of protecting the public from the erroneous release of a criminal alien and preventing the absconding of a criminal alien who fears that the Immigration Judge's release order may be reversed on appeal. 63 Fed. Reg. at 27,447.

## V. CONCLUSION

We find that the Service properly invoked the automatic stay provision of § 3.19(i)(2) when it timely presented the Form EOIR-43 to the Immigration Court. The Immigration Judge was without any authority to refuse the form or to make his own determination that his custody decision should not be stayed. Therefore, an automatic stay is in effect as of January 20, 1999, and it will remain in effect pending our expedited decision on the Service's bond appeal.

*DISSENTING OPINION:* Anthony C. Moscato, Board Member

I respectfully dissent.

The issue in this case involves the interplay between two sections of the Department of Justice's regulation governing custody and bond, 8 C.F.R. § 3.19 (1999). *See* Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,448-49 (1998). More specifically, it involves the question whether an Immigration Judge's determination, pursuant to 8 C.F.R. § 3.19(h)(2)(ii), an alien is not "subject to" the mandatory detention provisions of section 236(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1) (Supp. II 1996), for bond or custody redetermination purposes, nullifies the automatic stay authority provided to the Immigration and Naturalization Service under 8 C.F.R. § 3.19(i)(2).

The majority has answered this question in the negative, asserting that the automatic stay provision was designed, by its nature, to guard against mistakes in adjudication that would cause aliens who should be detained to be set free and therefore was intended to survive an Immigration Judge's determination to the contrary. The majority further asserts that the language of 8 C.F.R. § 3.19(i)(2), in particular the phrase "subject to" in the first sentence and elsewhere, relates to the charging decision by the Service, and that an Immigration Judge's determination does not affect the Service's authority to invoke an automatic stay once it has initially charged an alien with a crime subject to the mandatory detention scheme. While this may be a permissible reading of the interplay between the two sections, I do not believe it is the best reading, for the following reasons.

First, the majority has engaged in a lengthy legal analysis to support its position. I believe that that analysis cannot overcome the plain meaning of the regulations as written. As stated in 8 C.F.R. § 3.19(h)(2)(i), the basic rule is that, after the expiration of the Transition Period Custody Rules, an Immigration Judge cannot redetermine conditions of custody with regard to several classes of aliens, including the following:

> Aliens in removal proceedings *subject to* section 236(c)(1) of the Act (as in effect after expiration of the Transition Period Custody Rules).

8 C.F.R. § 3.19(h)(2)(i)(D) (emphasis added). However, later in the same general section, the regulations provide a clear exception to the general rule, at § 3.19(h)(2)(ii), which reads, in relevant part, as follows:

> With respect to paragraphs (h)(2)(i)(C), *(D)* and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge *that the alien is not properly included* within any of those paragraphs. (Emphasis added.)

On its face, this language states that an Immigration Judge may determine either that the alien has not been charged with inadmissibility or

deportability on any of the grounds that fall within the compass of the mandatory detention provisions, or that the Service's charge under one of the enumerated grounds is unsupported. The authority of an Immigration Judge to make such a decision and to proceed therefrom to a redetermination of custody conditions is clear.

The next question, and the central one in this case, is whether the Immigration Judge's determination that an alien is not properly included under § 3.19(h)(2)(i)(D) for custody redetermination purposes extends to, and nullifies, the automatic stay provision in the regulations. That provision, at § 3.19(i)(2), states in relevant part:

> *Automatic stay in certain cases. If an alien is subject to* . . . section 236(c)(1) of the Act (as designated on April 1, 1997), and the district director has denied the alien's request for release or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR-43) with the Immigration Court on the day the order is issued, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. (Emphasis added.)

The critical words here are in the first sentence, "[i]f an alien is subject to." If the alien is "subject to" the mandatory detention scheme set forth at section 236(c)(1) of the Act, then the automatic stay authority applies. If not, then not. In the Board's research on this issue, we have discovered that the words "subject to" are used frequently in immigration law and are taken to mean a variety of things. Thus, the words, at least in the immigration context, have no specific meaning as a term of art.

We must look, then, to their general definition. *Black's Law Dictionary* 1594 (4th ed. l951) provides the following definitions: "[l]iable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable for." In an interesting range of alternatives, the words "governed or affected by" provide the closest match for the current circumstance. The question then becomes whether, when an Immigration Judge determines, pursuant to 8 C.F.R. § 3.19(h)(2)(ii), that *an alien is not properly included* within the category of "[a]liens in removal proceedings *subject to* section 236(c)(1) of the Act," the alien remains *subject to* those provisions for automatic stay purposes. 8 C.F.R. § 3.19(h)(2)(i)(D) (emphasis added).

It would seem not. The language is clear. The Immigration Judge can determine that the alien is not properly within the category of aliens subject to section 236(c)(1) of Act. At no point does the regulation specifically exempt the automatic stay provision from the impact of this determination. Had the Department intended to tie the automatic stay authority to the Service's charging decision, as the majority suggests, it could easily have used the words "charged" or "determined by the Service" or some other for-

mulation in the provision. Rather, the automatic stay provision uses precisely the same "subject to" language as it used in the other regulations, *including § 3.19(h)(2)(i)(D)*. It is unlikely, in the absence of specific language so stating, and especially where identical language is used, that the intention was to achieve two diametrically opposite results in sections of a regulation separated by only four paragraphs and covering the same subject matter.

Therefore, I submit that a plain reading of the regulation, as drafted, supports the conclusion that the automatic stay provision has no effect when the Immigration Judge determines that the alien is *not* "subject to" section 236(c)(1) of the Act.

Second, the majority has suggested that the overall purpose of the regulation was to implement the detention scheme enacted by section 303 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-586 ("IIRI-RA") (codified at section 236 of the Act), and that the specific purpose of the automatic stay provision following the expiration of the Transition Period Custody Rules is to guard against the possibility of bonds being set or releases from custody ordered either mistakenly or inadvertently by Immigration Judges. Therefore, the argument runs, the automatic stay provisions should remain in effect in the instant situation as well, to guard against the possibility that Immigration Judges will mistakenly determine that aliens do not fall under the mandatory detention scheme. There is general language in the supplementary materials regarding the need to ensure the safety of the public and to implement the purposes of the Act that give impetus to this view. There is also, however, language which supports and reinforces the importance of Immigration Judges' decisions as a safeguard in circumstances where a general rule mandates detention.

In its discussion supporting the adoption of a general rule regarding mandatory detention, the Department, citing *Reno v. Flores*, 507 U.S. 292 (1993), stated:

> Like the regulation upheld in *Flores*, the final rule provides for an individualized hearing on whether an alien in custody actually falls within a category of aliens subject to mandatory detention. In determining or redetermining custody conditions, the district director or IJ necessarily asks such individualized questions as . . . "is there reason to believe that this person falls within a category barred from release under applicable law?" . . . Under *Flores*, the IJ or district director may validly enforce the regulatory policy of detaining those classes of aliens whose release has been determined by Congress or the Attorney General to present unacceptable risks. *Cf. Davis [v. Weiss* ], 749 F. Supp. [47,] 52 [(D. Conn. 1990)]. ("The most effective procedures are those already built into (one of the TPCR's predecessors), *namely those procedures which ensure that the alien is rightfully an 'aggravated felon' under the [Immigration and Nationality Act] and is properly subject to mandatory detention*.").

63 Fed. Reg. 27,444-45 (emphasis added).

Here, in a paragraph asserting the propriety of a general rule barring

certain categories of aliens from release, are statements both describing the range of the Immigration Judge's individualized inquiry and asserting that the most effective procedures are those which ensure that the alien is "rightfully" an aggravated felon and "properly" subject to mandatory detention. It is that procedure that lies at the heart of this case. The capacity of the district director and, more directly relevant to our purposes here, the Immigration Judge, to make those determinations is cited as an important safeguard in support of the Department's regulation implementing the mandatory detention process.

The automatic stay authority is one which permits the Service to continue mandatory detention in the face of an Immigration Judge's determination that bond or release are possible in cases "subject to" section 236(c)(1) of the Act. The statements cited above give force to the view that the Immigration Judge's very different determination, *that an alien does not fall under the mandatory detention scheme at all*, is intended to bring an end to mandatory detention.

In addition, on page 27,445 of the Federal Register cited above, the Department said:

> Congress has exercised this power in AEDPA and IIRIRA by barring permanent residents convicted of an aggravated felony from seeking discretionary relief from removal. The elimination of relief considerably increases flight risk, *see, e.g., Bertrand v. Sava*, 684 F.2d 204, 217 n.16 (2d Cir. 1982) ("*The fact that the petitioners are unlikely to succeed on their immigration applications * * * suggests that they pose * * * a risk (to abscond) if (released*.") (Emphasis added.)

Assuming that to be true, it clearly applies principally to those falling under the mandatory detention scheme. Once the Immigration Judge has determined that the alien does not fall within that category, the likelihood of success for the alien is greater, and the degree of risk in absconding accordingly less. This statement also gives rise to the inference that the capacity to continue detention automatically was intended to reach only those *subject to* the mandatory detention scheme.

Third, the majority suggests that if 8 C.F.R. § 3.19(h)(2)(ii) is read as has been argued above, the result will be to reduce the life and vigor of the automatic stay provision. That is correct. The automatic stay provision will be in force when an Immigration Judge makes a bond or custody redetermination in a case which does fall under the mandatory detention scheme. While the Service used that provision during the TPCR, when it disagreed with Immigration Judge decisions then permissible in cases that would now be governed by section 236(c)(1), it seems likely that the automatic stay will be little used now that section 236(c)(1) has taken effect.

However, it is unclear that this should be an issue of concern. In the regulatory history discussing the automatic stay provision, the Department clearly indicated its intent that this authority would be invoked infrequent-

678

ly. Noting that the automatic stay is tied to a Service appeal, the Department stated that "[c]ustody appeals are themselves *unusual*," and that "[i]t is expected that such appeals will remain *exceptional*." 63 Fed. Reg. at 27,447 (emphasis added). The discussion further provides that "[t]he interests served by the automatic stay are considerable, even if the provision *only occasionally comes into play*." *Id.* (emphasis added). We should not be concerned if an authority that was expected to be used infrequently, even under the TPCR, has little remaining vitality because the bright lines of the law are clearly understood by all.

Finally, in attempting to read these two potentially conflicting sections in harmony, we are required to consider the potential impact of the different readings upon the operation of the regulation and the immigration law in general to determine whether they accord with the regulation's language and intent. If the majority's position is adopted, then:

> (1) an alien who has been determined by the Immigration Judge to fall outside the scope of section 236(c)(1) will continue in mandatory detention, *without further review or adjudication of the Immigration Judge's decision that provides for his or her freedom*, for a period of 3 to 6 months, while the party(s) prepare and submit appeals to the Board and the Board adjudicates the appeals;

> (2) during the period while the Service's bond appeal is pending, the Government will continue to bear the burden of incarcerating an alien who has been determined by the Immigration Judge to be not *subject to* the detention mandates under which he or she is being held. This would occur at a time when the detention capacity of the Government is increasingly strained; and lastly,

> (3) while the decisions of Immigration Judges regarding bond and merits would remain subject to appeal to the Board, the decision regarding continuing detention, of the most immediate interest in time, would be made by the Service and not be subject to Board review for months.

Each of these consequences would occur despite the provision of an alternate mechanism *in the regulation* for the Service to seek a stay of an Immigration Judge's release order, specifically the general emergency stay authority provided to the Board in 8 C.F.R. § 3.19(i)(1). The regulation under consideration is a careful attempt to implement the clear intent of Congress in a judicious and balanced fashion. The consequences described above are so extreme that they seem unlikely to have been intended by the authors of the regulation.

On the other hand, if we interpret the interplay between 8 C.F.R. §§ 3.19(h)(2)(ii) and (i)(2) in such a way that the Immigration Judge's determination that an alien is *not* "subject to" mandatory detention under section 236(c)(1) of the Act takes the alien out of the class of aliens whose release orders can be automatically stayed by the Service, then:

> (1) the above-described adverse consequences inherent in the majority's position

would not occur;

(2) the Service would still have the opportunity to request that a general discretionary stay be granted by the Board. In that event, both the Service and the alien would have *immediate recourse* to the Board for a decision regarding whether or not the Immigration Judge correctly decided that the alien is eligible for release, ensuring that any continued detention, with its resource and liberty implications, would be supported by the Board's decision on the emergency stay; and lastly,

(3) the question whether an Immigration Judge's release order may be stayed in a case where the Service has charged an alien under one of the mandatory detention provisions, but the Immigration Judge has found the charge(s) unsupported, will be decided by the Board of Immigration Appeals, the same entity that will decide the overall issues of the alien's removability in the context of the Service's merits and bond appeals.

When we can interpret the regulations in a manner that gives effect to the Immigration Judge's determination that an alien is not properly included in the class of aliens who are subject to mandatory detention, while at the same time ensuring the Service an appropriate means to seek an emergency discretionary stay of the Immigration Judge's resulting release order, we should do so. Consistent with that end, it is my view that, except where the Service seeks and is granted a discretionary emergency stay by the Board, effect should be given to an Immigration Judge's order releasing an alien as a result of his considered judgment that the alien is *not* "subject to" mandatory detention and does not otherwise merit continued detention.

For all the reasons set forth above, most particularly the clear meaning of the regulatory wording, I believe that the Immigration Judge's determination that an alien is not subject to the mandatory detention scheme set forth in section 236(c)(1) of the Act brings the case outside the reach of the automatic stay.